IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Shawn Tompkins (R-45728), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 50206 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| ) | |
| Whiteside County Jail, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Shawn Tompkins, a prisoner currently incarcerated at Taylorville Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming a denial of medical care when he was incarcerated at Whiteside County Jail. On October 23, 2017, the Court conducted a *Pavey* hearing concerning Plaintiff's efforts to exhaust administrative remedies before filing this lawsuit. For the reasons discussed below, the Court finds that Defendants did not meet their burden of demonstrating that Plaintiff failed to exhaust administrative remedies. Therefore, it is the Court's recommendation that Defendants' affirmative defense of failure to exhaust administrative remedies be rejected and this action shall proceed to the merits of Plaintiff's claims.

**STATEMENT**

**Background**

Relevant to this action, Plaintiff was incarcerated at Whiteside County Jail ("Jail") from February 4, 2014 through February 13, 2015. Plaintiff alleges that for a three-month period, Defendant Julie Watkins, who is a medical provider at the Jail, and an unnamed doctor ignored his complaints of "pneumonia-like symptoms" and refused to treat him.

Defendants assert that Plaintiff failed to comply with the exhaustion requirements of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). They moved for summary judgment on the issue of exhaustion, arguing that summary judgment should be granted based on the combination of: (1) Whiteside County Jail has a grievance system in the form of the procedures that Jail administrators identified in the Jail's Handbook; (2) Plaintiff received the Handbook; and (3) yet Plaintiff admitted in his complaint that he did not grieve his complaints about his medical care that are raised in this lawsuit. In response, Plaintiff introduced evidence creating a disputed issue of fact as to whether he received a copy of the Handbook, and whether the Handbook provisions cited by the administrators were not a grievance process in any event. He also introduced unrebutted evidence that his attempts to grieve his complaints about his medical care were ignored or thwarted. Therefore, the District Judge denied Defendants' motion, and set the

matter for an evidentiary hearing in accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

The *Pavey* hearing was conducted on October 23, 2017. Defendants presented the same evidence that they introduced at summary judgment, and little additional. Lt. Tim Erickson, the Jail Administrator, testified that inmates are provided an Inmate Handbook, along with toothpaste, toothbrush, comb, soap, and a mattress upon booking. Inmates sign an initial booksheet in which they confirm that they received "all standard jail issued items", but the sheet does not specifically itemize the Handbook. The Jail also has no record that Plaintiff returned the Handbook, as required per Jail procedures, when he left the Jail.

Lt. Erickson specifically addressed three sections of the Handbook, a copy of which was introduced as an exhibit at the hearing. First, he pointed to the Introduction, which provides that any questions concerning the Handbook should be directed to him. Second, he discussed the "Inmate Request" section, which sets forth the procedure for obtaining and completing "Inmate Request Forms". Lt. Erickson testified that this is the process for making requests regarding medical care. Lastly, the third provision that Lt. Erickson testified regarding is the section near the end where inmates are instructed that if they "have any complaints, please put them in writing, and forward them to the Lieutenant". Lt. Erickson testified that he does receive such complaints from time to time. He testified that the Jail has no record of such complaint from Plaintiff, nor record of him submitting inmate request forms.

Both Lt. Erickson and a deputy, Deputy Grunder, also provided testimony regarding the "Inmate Request Form" process. Lt. Erickson explained that for an inmate to obtain a blank form, the inmate needs to make an affirmative request to an officer for a blank form, and the officer then needs to provide the inmate with the form. Deputy Grunder testified that an inmate returns a completed form to the deputies. If the request is medical in nature it will usually be put in the nurse's box in the nurse's office. All other inmate request slips will usually be put on Lt. Erickson's desk. If the issue is minor, a deputy might handle it him or herself or they might give it to a corporal, but the majority are given to Lt. Erickson.

Plaintiff testified that he never received an inmate handbook at any time while he was incarcerated at the Jail. Plaintiff testified that he made numerous requests and complaints about being denied medical attention at the Jail, and he doesn't know why the Lieutenant did not ultimately receive them. He testified that he even had his mother call the Jail several times. Plaintiff testified that he was unable to file a grievance because three different Jail officers told him that "Whiteside County Jail does not have a grievance policy or procedure". The first officer was Bill Wilhelmi. Plaintiff could not remember the names of the other two officers, but described them as "two larger jailers". He testified that he had these conversations with Wilhelmi all throughout the year that he was incarcerated at the Jail, and that they occurred in an "area" that was "in the hallway for staff". The conversations varied, but Wilhelmi would "basically" tell Plaintiff to contact the nurses the next morning.

[2]

**Analysis**

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal action concerning prison conditions. 42 U.S.C. § 1997e(a). An inmate must take all steps required by the prison's grievance system to properly exhaust administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). Accordingly, the burden is on the defendant to prove that the inmate failed to exhaust. *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). Where factual disputes exist concerning exhaustion, the district court must decide those issues through an evidentiary hearing. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

An inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). "Prison officials may not take unfair advantage of the exhaustion requirement ... and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) ("[t]he prison cannot shroud the prisoner in a veil of ignorance and then hide behind a failure to exhaust defense to avoid liability"). "Affirmative misconduct" that renders remedies unavailable includes jail authorities actively misleading an inmate regarding what procedures are available. *See Thomas v. Reese*, 787 F.3d 845, 847-48 (7th Cir. 2015); *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007).

As explained below, the Court finds that Defendants failed to carry their burden of showing that administrative remedies were available to Plaintiff, but he did not exhaust them.

Plaintiff presented well and appeared sincere. The Court is inclined to credit his testimony that he never received an inmate handbook, especially given that Defendants could not produce any record confirming that the Handbook was offered to him or that he received one. But as the District Court concluded at summary judgment, it is ultimately not of consequence whether Plaintiff received the Handbook. This Court also need not determine – again like the District Court – whether, if Plaintiff did indeed receive it, he should fairly have understood that the Inmate Request and other procedures noted by Lt. Erickson were in actuality a grievance process. This notion appears dubious at best, given how vague the outlined procedures are, and the fact that they are phrased as "permissive", *i.e.,* you "may" write a complaint, not mandatory, such as you "must" or "shall". Nor is there anything in the language of the Handbook that explains consequences for failure to follow the purported procedures, as one would expect to see for a PLRA grievance procedure.

But even assuming purely for the sake of argument that those procedure do constitute a grievance process, Plaintiff has testified credibly that "affirmative misconduct" by jail officials rendered those procedures "unavailable" to him. As set forth above, Plaintiff testified that three different Jail officers told him on numerous occasions that the Whiteside Jail has no grievance procedure, and at least one of the officers told him to instead keep requesting care from the nurses.

[3]

To reiterate, "affirmative misconduct" that renders remedies "unavailable" includes jail authorities actively misleading an inmate regarding what procedures are available. *See Thomas,* 787 F.3d at 847-48; *Twitty,* 226 F. App'x at 596. Defendants did not present *any* evidence to rebut Plaintiff's testimony. Plaintiff made similar averments in his summary judgment motion, and thus Defendants were on notice, yet they did not present Wilhelmi or the "larger jailers" to testify at the *Pavey* hearing.

In sum, on the record before the Court, Defendants failed to carry their burden of showing that administrative remedies were available to Plaintiff, but he did not exhaust them. Therefore, it is this Court's Report and Recommendation that Defendants' affirmative defense of failure to exhaust administrative remedies be rejected and this action shall proceed to the merits of Plaintiff's claims. Any objection to this Report and Recommendation must be filed by February 23, 2018. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Entered: 2/6/2018          By: _____
Iain D. Johnston
U.S. Magistrate Judge